## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN WAYNE CESSNA,** | : | **CIVIL NO.  3:14-CV-0361** |
| | : | |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **ROBIN M. LEWIS, et al.,** | : | |
| | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

John Wayne Cessna ("Cessna"), an inmate formerly incarcerated at the State Correctional Institution at Waymart ("SCI-Waymart"), filed this civil rights action on February 27, 2014 (Doc. 1), naming twenty-four individuals employed in various capacities with the Pennsylvania Department of Corrections ("DOC").  Presently ripe for disposition is defendants' motion (Doc. 18) to dismiss Cessna's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, the motion will be granted.

## I.      Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).

Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry.  See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009).  Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

II.   **Allegations of the Complaint**

A.   Misconduct B462330

On January 28, 2012, defendants Correctional Officers Shiffer and Wertman searched Cessna's cell, which contained "blank forms," a "yellow piece of paper" and an extra box. (Doc. 1, ¶¶ 28, 30, 32).  Cessna was questioned by defendant Sergeant Heller on that same day and explained that he was "re-doing the block count sheet for the D-2 officer, Rosie Hernandez Co1."  (Id. at ¶¶ 31, 34, 35).  On January 30, 2012, plaintiff approached defendant Unit Manager White, who provided him with documentation indicating that the extra box was for educational purposes.  (Id. at ¶¶ 36, 37).  He was summoned to the security office and, at that time, he gave defendant Wertman the document indicating that he had permission to possess the extra box; he was not questioned about the blank forms or the yellow piece of paper.  (Id. at ¶¶ 38, 39, 41).  Later that day, he was escorted to the Restricted Housing Unit ("RHU") and served with Misconduct Report 462330.  (Id. at ¶¶ 42, 43; Doc. 2, p. 1).  While awaiting his hearing, he purportedly spent "almost a full month in the RHU depriving him of his phone privileges, commissary, yard and religious practices which are affored to all general population inmates."  (Id. at ¶ 254).

He alleges that Wertman and Shiffer lied on the misconduct report in that they reported that he could not provide documentation for the extra box.  (Id. at  ¶ 44).  At the hearing, Wertman presented an email from White stating that Cessna had permission to possess the extra box.  (Id. at ¶ 49).  Defendant hearing examiner Plaska dismissed all charges with prejudice.  (Id. at ¶ 50).

Upon his release from the RHU, Wertman and Shiffer allegedly instructed him to "let everything go and not file any grievances if he knew what was good for him."  (Id. at ¶ 56). He alleges in Count II that "the failure of the defendants [White, Wertman, and Shiffer] to accurately provide and depict the facts for misconduct B462330 . . . constituted violations of his First Amendment right to Free Speech and Expression and his Fourteenth Amendment right to Due Process."  (Id. at ¶ 253).

Cessna alleges that, after his release from the RHU he was transferred to D-1 Housing Unit.  He was allegedly informed by defendant Berkoski, the main block officer, that he was "on this block, D-1, as punishment, because the HEX did not do her job correctly" with respect to the disposition of Misconduct B462330.  (Doc. 1, ¶¶ 60, 69, 80).  He alleges that, despite the fact that he was not on disciplinary restrictions at the time, defendant Berkoski treated him differently than other inmates with respect to confinement to his cell, housing tracking sheets, yard, and prison mail.  (Id. at ¶¶ 66-68).  Berkoski allegedly invaded Cessna's personal space, used obscene language, and placed him in a threatening situation with other inmates.  (Id. at ¶¶ 71-72).  Cessna alleges that he was treated in this manner because Berkoski believed "he was gay, considered him a sex offender, and a 'trouble maker'."  (Id. at ¶ 70).

On February 29, 2012, Cessna sought a separation from Berkoski through members of his Unit Management Team, including defendant White, but was told that "nothing could be done and that he should file a grievance."  (Id. at ¶¶ 73-76).  Later that day he was told by Driver that "he should stay away from him and his desk if he knew what was good for him,

4

and follow the same instructions that Berkoski had issued." (<u>Id.</u> at ¶ 80).  That evening, Cessna approached defendant Security Captain Dobbs and Corrections Officer Bell and requested that he receive a separation from Berkoski, Driver and White. (<u>Id.</u> at ¶¶ 81-83). Dobbs instructed Cessna to contact defendant Lieutenant Smith. (<u>Id.</u> at ¶ 84).  Cessna forwarded a DC-135A Inmate Request to defendant Smith. (<u>Id.</u> at ¶ 85).

On March 5, 2012, Berkoski allegedly threatened Cessna and instructed him to "stop contacting people about the abuse and mistreatment that was taking place on D-1 because 'no one has done anything in the past to stop it and no one is going to stop it now'." (<u>Id.</u> at ¶ 87, 88).  Berkoski purportedly stated "he can do anything he wants because he goes fishing with all the Captains and Lieutenants" and "they will always take his side." (<u>Id.</u> at ¶ 89).

Cessna relayed to Berkoski that he suffered from a serious medical condition and was not supposed to be under undue stress. (<u>Id.</u> at ¶ 93).  Specifically, Cessna was diagnosed with HIV in 2006. (<u>Id.</u> at ¶ 96).  In 2009, he was "reclassified with an AIDS diagnosis and required immediate medical treatments and medication." (<u>Id.</u> at ¶ 97).  Berkoski indicated that he was aware of Cessna's condition. (<u>Id.</u>)  Cessna believes that Berkoski obtained his medical information illegally. (<u>Id.</u> at ¶ 95).  Berkoski told him "to expect the worst retaliation he could if he tried anything else and that he was not allowed to move from his bed or he would be sorry." (<u>Id.</u> at ¶ 98).  Cessna alleges that the constant state of fear that resulted from Berkoski's threats had an adverse impact on his medical condition. (<u>Id.</u> at ¶¶ 100-01).

He alleges in Count III and Count V that Berkoski's conduct violated the First

Amendment in that it wasretaliatory in nature and, and Berkoski's treatment of him violated his Fourteenth Amendment rights.  (Id. at ¶¶ 255, 259).  He also avers in Count X that defendants Berkoski, Driver, White, Smith and Dobbs were deliberately indifferent to his serious medical needs when they failed to ensure him a "normal and safe environment which is afforded to all inmates, despite their knowledge of the Plaintiff's medical condition."  (Id. at ¶ 271).   In Count X, he also alleges that defendants Berkoski and Martin divulged confidential medical information and that defendants Stender, Evans, and Quinn failed, in their roles as supervisors, to keep Berkoski and Martin "under control."  (Id. at ¶ 270).

2.   Misconduct B274040

Cessna alleges that Smith's failure to take action to resolve the issues he raised in the DC-135 that he filed against Berkoski on March 13, 2012, prompted him to file criminal complaints against Berkoski, Driver and White with Clerk of Courts in Wayne County, Pennsylvania on March 12, 2013.  (Id. at ¶¶  105-06, 115).  On March 16, 2012, Berkoski charged Cessna with "not sitting-up/sleeping for the 2130 count and disobeying a direct order" in misconduct B274040.  (Id. at ¶ 108).  On March 22, 2012, Cessna appeared before defendant Plaska, who found him guilty and sanctioned him with fifteen days cell restriction. (Id. at ¶ 142).  Cessna alleges that during his hearing, Plaska denied him witnesses and requests for assistance.  (Id. at ¶¶ 141, 145-46).  Dobbs and Smith allegedly made the decision to move plaintiff to a different housing unit after this incident.  (Id. at ¶¶ 118, 119).

On March 30, 2012, the Pennsylvania State Police notified Cessna that the Security Office at SCI-Waymart and the Office of Professional Responsibility ("OPR") would be

conducting an investigation into the criminal complaint allegations.  (Id. at ¶ 120).
He received letters from the Department of Justice on March 30, 2012, and from the
Pennsylvania State Attorney General's Office on April 4, 2012, concerning "the ongoing
situation at SCI-Waymart."  (Id. at ¶ 123).  Defendant Lieutenant Smith conducted the
investigation which included interviewing other inmates and staff identified by Cessna as
individuals with knowledge.  (Id. at ¶¶ 127, 128, 130, 135).

In Count IV, Cessna avers that the misconduct issued by Berkoski was frivolous and
in retaliation for him filing criminal complaints against Berkoski, Driver and White.  (Id. at ¶
257).  He further alleges that the fifteen days of cell restriction "hampered his yard and
library privileges as well as his communication with outside venues."  (Id. at ¶ 258).  In
Counts I, VIII and IX, he contends that the failure of defendants White, Smith and Dobbs to
provide him with the needed protection from Berkoski "constituted retaliation for petitioning
the government for redress of grievances and therefore violated the First Amendment" and
constituted deliberate indifference in violation of the Eighth Amendment.  (Id. at ¶¶ 251,
265-67).

3. Misconduct B467957

On April 17, 2012, he was placed in the RHU and given Misconduct B467957 for
violating institution rules.  (Id. at ¶ 148; Doc. 2, p. 17).  While in the RHU he approached
Evans and Quinn about having time in the yard because it was a "major requirement of his
medical condition," and even when he signed up for yard, he did not receive it.  (Id. at ¶¶
152-53).  Defendants Martin, Keller, Spry, and Shuman "were in charge of taking down the

names of the inmates request yard." (Id. at ¶ 153).

In Count XI, Cessna alleges that defendants Shuman, Spry, Keller, Evans, Quinn, and Stender, in retaliation for complaints by Cessna against their fellow officers, denied him yard "without need or provocation" or failed to intervene to prevent the misuse of authority. (Id. at ¶ 272). He also alleges that the failure of Shuman, Spry, Keller and Quinn to curb the pattern of abuse and mistreatment by Quinn, Evans and Stender constituted deliberate indifference in violation of the Eighth Amendment. (Id. at ¶ 273).

### 4.   Misconduct A335634

On April 24, 2012, Cessna was charged by defendant Smith in misconduct A335634 with lying to an employee and any violation of the Pa Crimes Code, including filing false reports to law enforcement. (Id. at ¶¶ 159-61). Purportedly, the misconducted stated that it was a " 'result of an on-going investigation from March 17, 2012,' the day they [sic] plaintiff reported to Lt. Smith and Capt. Dobbs of the abuse and treatment by Berkoski." (Id. at ¶ 159).

The hearing on the misconduct was held on April 26, 2012. (Id. at ¶ 174). Defendant Plaska allegedly "believed that because of Lt. Smith's report, that the plaintiff lied to employees and made false accusations against Berkoski." (Id. at ¶ 181). Cessna alleges that defendant Plaska denied him witnesses and concluded that he lied at his April 26, 2012 hearing on Misconduct A335634. (Id. at ¶¶ 174, 181). He was found guilty on both charges and "was given a total of one-hundred and twenty days of punitive segregation (DC) status, loss of job effective April 17, 2012, loss of commissary, phone and yard privileges." (Id. at

¶¶ 182-83).  He appealed the decision to the Program Review Committee ("PRC"), which included defendants Banta, Murphy and Delucy.  (Id. at ¶¶ 185, 204).  His appeal was denied.  (Id. at ¶ 203).  Cessna alleges that the PRC was biased and corrupt.  (Id. at ¶¶ 207-09).  He appealed the denial to defendant Superintendent Gavin; the appeal was denied.  (Id. at ¶¶ 218-221).  Cessna pursued an appeal to defendant Chief Hearing Officer Lewis.  (Id. at ¶¶ 222-225, 228).  The appeal was denied.  (Id. at ¶ 228).

While in the RHU during this time frame, he alleges that he was denied yard by defendants Evans, Quinn, Spry, Keller and Shuman.  (Id. at ¶ 116-27).

In Count VII, he alleges that "[t]he actions of defendant Lt. Smith in refusing to call all of the witness [sic] for the deposition requested by the Plaintiff, Plaska finding him guilty of violation of the PA Crimes Code and other charges without all the evidence needed, Lt. Smith providing an inadequate, and inaccurate written misconduct, A335634, which was also used to terminate the investigation that was to be performed for the PSP and of defendants Plaska, Lt. Delucy, Banta, Murphy, Maj. Kosciuk, DelRosso, Ellett, Lewis, Gavin and Vinanski in allowing and upholding the disciplinary decision to stand, denied the Plaintiff Due Process of law and because the Plaintiff was disciplined because he exercised constitutionally protected rights in violation of his Substantive Due Process the defendants are all liable in violation of his Fourteenth Amendment right and his First Amendment right to free speech and to be free from retaliation . . . " (Id. at ¶ 264).  He again alleges in Count Count XII, which is lodged against defendants Plaska, Lewis, Delucy, Banta, Murphy, Kosciuk, Delrosso, Ellett, and Gavin that the "unjustified denial of witnesses, conviction of a

disciplinary offense with no real supporting evidence" violated his due process rights.  (Id. at ¶ 274).

In Count VI, Cessna avers that defendants White, Smith, Dobbs, Kosciuk, Banta, DelRosso, Ellet, Gavin, and Vinanski had knowledge of "numerous instances of multiple unconstitutional violations and unbecoming conduct concerning the discriminations and retaliation the plaintiff . . . was being subjected too [sic]" and they failed to take steps to correct the "ongoing wrongs committed by the other defendants under their supervision" in violation of the Eighth and Fourteenth Amendments.   (Id. at ¶¶ 261-63).

## III.   Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials.  See 42 U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).

### A.   First Amendment

The First Amendment offers protection for a wide variety of expressive activities.  See U.S. Const. amend I.  These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct.  See Turner v. Safley, 482 U.S. 78, 89 (1987).  Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment.  See Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).  To prevail on a retaliation claim under 42 U.S.C. § 1983, plaintiff must demonstrate:  (1) that he was engaged in constitutionally protected activity; (2) that he suffered an "adverse action" by government officials; and (3) that there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him."  Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225).

With respect to the first and second Rauser prongs, "[a]lthough the elements of a First Amendment retaliation claim remain constant, the underlying concepts that they signify will vary with the setting—whether activity is 'protected' or an action is 'adverse' will depend on context.  Standing in his cell in a prison, an inmate is quite limited in what he can say; his government jailor can impose speech-limiting regulations that are 'reasonably related to legitimate penological interests.'  Turner, 482 U.S. at 89 (1987).  The fact that certain conduct of the plaintiff must be 'protected' in order to state a claim does not change with the setting—what changes is the type of conduct deemed protected in that particular setting."  Thaddeus-X v.

11

<u>Blatter</u>, 175 F.3d 378, 388 (6th Cir. 1999).  The fact of incarceration and the valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security justify limitations on the exercise of constitutional rights by inmates.  See <u>Pell v. Procunier</u>, 417 U.S. 817, 822-23 (1974).  Thus, a prison inmate "retains [only] those rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  <u>Id.</u> at 822.

Cessna alleges that the four misconducts that are the subject of his complaint, B462330, B274040, B467957, and A3335634, were issued in retaliation for exercising his First Amendment rights.  In considering the first and second prongs, it is clear that the circumstances surrounding all but Misconduct B462330 satisfy the first and second prongs.  With respect to the B462330, the retaliation claim based on this misconduct is subject to dismissal as Cessna was not engaged in any protected conduct at the time and, therefore, cannot meet the first element.  Conversely, Cessna alleges that he was engaged in protected conduct in the form of the filing of criminal complaints in the Court of Common Pleas of Wayne County and, that in direct retaliation for engaging in such conduct, he suffered adverse action in the form of the issuance of misconducts B274040, B467957, and A3335634.  He therefore meets the first two prongs with respect to these alleged instances of retaliation.

In considering the third prong, the court is required to determine whether there is a causal connection between the exercise of the constitutional right and the adverse action.  The plaintiff must show that the protected activity was a substantial

motivating factor in the state actor's decision to take the adverse action.  This "motivation" factor may be established by alleging a chronology of events from which retaliation plausibly may be inferred.  Tighe v. Wall, 100 F.3d 41, 42 (5th Cir. 1996); Goff v. Burton, 91 F.3d 1188 (8th Cir. 1996); Pride v. Peters, 72 F.3d 132 (Table) (7th Cir. 1995).  It is plaintiff's burden to prove that defendants were motivated by retaliation.  Hannon v. Speck, No. 87-3212, 1988 WL 131367, at *4 (E.D. Pa. Dec. 6, 1988) (stating that "[i]n bringing a § 1983 action alleging such retaliation, an inmate faces a substantial burden in attempting to prove that the actual motivating factor . . . was as he alleged.").

With respect to Misconducts B467957 and A335634, Cessna seeks to establish this causal link based upon the temporal proximity between the protected conduct and the issuance of the misconducts.  In such instances, "the timing of the alleged retaliatory action must be unusually suggestive before a causal link will be inferred." Krouse v. American Sterilizer Co., 126 F.3d 494, 503 (3d Cir.1997); Rauser, 241 F.3d at 334; see also Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003) (concluding that the temporal proximity, nearly six months, is not unduly suggestive and does not sufficiently establish any causal link).  Courts have rebuffed efforts to infer causation from temporal proximity when a span of weeks or months separated the constitutionally protected conduct from the alleged acts of retaliation.  See Killen v. N.W. Human Servs., Inc., No. 06–4100, 2007 WL 2684541, at *8 (E.D.Pa. Sept.7, 2007) (holding that temporal proximity of seventeen days was insufficient to establish

13

causation); see also Farrell v. Planters Lifesavers, Co., 206 F.3d 271, 279 n. 6 (3d Cir. 2000) (suggesting that temporal proximity of seven weeks would be insufficient to establish causation); Smith v. ABF Freight Sys., Inc., No. 04–2231, 2007 WL 3231969, at *11 (M.D.Pa.Oct.29, 2007) (holding that temporal proximity of one and one-half months was insufficient to establish causation); Mar v. City of McKeesport, No. 05–19, 2007 WL 2769718, at *4 (W.D.Pa.Sept.20, 2007) (holding that temporal proximity of three months was insufficient to establish causation)." Fischer v. Transue, No. 04–2756, 2008 WL 3981521, * 10 (M.D.Pa. Aug.22, 2008) (holding that temporal proximity of three weeks was insufficient to establish causation).  Cessna cannot establish a causal connection between the filing of his criminal complaints and the issuance of these misconducts, either directly, or by temporal proximity, as they were filed months after the criminal complaints were filed.

With respect to Misconduct B274040, there is a direct causal connection in that the misconduct was issued within days of the filing of the criminal complaints.  In an instance such as this, where the inmate has made his *prima facie* case, the burden then shifts to the defendants.  Rauser, 241 F.3d at 334.  The prison officials may still prevail by showing that they "would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Id.

In an effort to meet their burden, defendants argue that the claim is subject to dismissal because Cessna was found guilty of the misconduct charges contained in

14

Misconduct B274040.  A finding of guilt in a prison disciplinary proceeding based on some evidence is sufficient circumstances to satisfy the defendants' burden, see, e.g., Carter v. McGrady, 292 F.3d 152, 159 (3d Cir.2002) (stating "Given the quantum of evidence of Carter's misconduct, we cannot say that the prison officials' decision to discipline Carter for his violations of prison policy was not within the 'broad discretion' that we must afford them."); Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994) (concluding that, because the finding of guilt in the inmate's disciplinary hearing was based on "some evidence," that finding "essentially checkmates his retaliation claim").  The hearing examiner found as follows:  "Cessna state this officer harasses him and it is retaliation since I placed criminal charges on him.  HEX believes the report of CO Berkowski to be more credible than Cessna's denial.  On C.O. Berkowski's report it presents preponderance of evidence that the 2130 Count was going on I/M Cessna was sleeping, which caused the CO to stop count, correct the situation and have to recount.  Order was given to sit up for count.  Cessna refused to obey this order and interfered with count.  This is the first formal misconduct written by CO Berkowski on I/M Cessna."  (Doc. 2, p. 15).  This constitutes "some evidence" sufficient to support a prison disciplinary conviction.  See Superintendent v. Hill, 472 U.S. 445, 455–56 (1985).  Accord Speight v. Minor, 245 F. App'x 213, 217 (3d Cir. 2007) ("As the District Court correctly noted, the disciplinary hearing record, specifically the charging officer's report, although meager, constitutes some evidence supporting the DHO's decision in Speight's case.").  Consequently, he is barred from

15

succeeding on his retaliation claims because the findings of guilt as to the misconduct

charges conclusively establishes that the defendants would have taken the same

actions regardless of any protected activity engaged in by Cessna.  Accord Nifas v.

Beard, 374 F. App'x. 241, 244 (3d Cir. 2010) (holding that Nifas's retaliatory

discipline claim fails because there is "some evidence" supporting the guilty findings

for the three disciplinary charges brought against Nifas after he filed his grievance);

Romansky v. Stickman, 147 F. App'x 310, 312 (3d Cir. 2005).

### B.    Eighth Amendment

#### 1.    Medical Needs

There is no doubt that the Eighth Amendment proscription against cruel and

unusual punishment requires that prison officials provide inmates with adequate

medical care.  Estelle v. Gamble, 429 U.S. 97, 103–105 (1976).  In order to set forth a

cognizable claim, plaintiff must allege a serious medical need and acts or omissions

by prison officials that indicate deliberate indifference to that need.  Estelle, 429 U.S.

at 104; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  The "deliberate

indifference" prong requires that the defendant actually know of and disregard "an

excessive risk to inmate health and safety."  Farmer, 511 U.S. at 837. Circumstantial

evidence can demonstrate subjective knowledge if it shows that the excessive risk was

so obvious the official must have known about it.  Beers–Capitol v. Whetzel, 256 F.3d

120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 842).  The Third Circuit has found

deliberate indifference where the prison official knew of a prisoner's need for medical

treatment and intentionally refused to provide it, delayed necessary medical treatment

for a non-medical reason, or prevented a prisoner from receiving needed or

recommended medical treatment.  Rouse, 182 F.3d at 197.

Individual liability will be imposed under Section 1983 only if the state actor

played an "affirmative part" in the alleged misconduct.  See Evancho v. Fisher, 423

F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d

Cir. 1998)).  Liability "cannot be predicated solely on the operation of respondeat

superior."  Id.  In other words, defendants in Section 1983 civil rights actions "must

have personal involvement in the alleged wrongs . . . shown through allegations of

personal direction or of actual knowledge and acquiescence."  Atkinson v. Taylor, 316

F.3d 257, 271 (3d Cir. 2003); Rode, 845 F.2d at 1207-08. When a plaintiff merely

hypothesizes that an individual defendant may have had knowledge of or personal

involvement in the deprivation of his or her rights, individual liability will not follow.

Atkinson, 316 F.3d at 271; Rode, 845 F.2d at 1207-08.

It has clearly been held that a prison official cannot be considered deliberately

indifferent simply because he or she failed to respond to medical complaints of a

prisoner who is being treated by medical personnel.  See Durmer v. O'Carroll, 991

F.2d 64, 69 (3d Cir.1993).  Cessna attempt to impose Eighth Amendment liability on

all defendants is not based on any direct involvement in the alleged denial of medical

treatment.  There is no question that, as an inmate with an AIDS diagnosis that Cessna

was under the care of medical personnel.  Accordingly, under Durmer, the Eighth

Amendment medical claims against all defendants fail as a matter of law.

2.      Conditions of Confinement

"The Cruel and Unusual Punishments Clause of the Eighth Amendment proscribes 'punishments which are incompatible with the evolving standards of decency that mark the progress of a maturing society.' " Tillman v. Lebanon Cnty. Corr. Facility, 221 F.3d 410, 417 (3d Cir. 2000) (footnote omitted) (quoting Estelle v. Gamble, 429 U.S. 97, 102 (1976)).  In order to establish an Eighth Amendment claim, a plaintiff must first prove "a sufficiently serious objective deprivation." Tillman, 221 F.3d at 418.  This objective component is narrowly defined. "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  The Eighth Amendment does not mandate that prisons be free of discomfort.  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  Only "extreme deprivations" are sufficient to make out an Eighth Amendment claim.  Id.  A prisoner must show that the condition, either alone or in combination with other conditions, deprived him of "the minimal civilized measure of life's necessities," or at least a "single, identifiable human need." Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (citing Rhodes, 452 U.S. at 347). These needs include "food, clothing, shelter, sanitation, medical care and personal safety." Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997).

18

Cessna's various conditions of confinement claims are generalized expressions of dissatisfaction with the conditions and policies of the RHU.  An inmate cannot sue for generalized grievances shared in a substantially equal measure by all or a large class of citizens.  Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 221-27 (1974).)  Specifically, "[t]he desire to obtain (sweeping relief) cannot be accepted as a substitute for compliance with the general rule that the complainant must present facts sufficient to show that his individual need requires the remedy for which he asks." McCabe v. Atchison, T. & S.F.R. Co., 235 U.S. 151, 164 (1914).   The complaint is devoid of any allegations of the extreme deprivation of food, clothing, shelter, sanitation, or medical care.  To the extent that the claim asserts a denial of personal safety or a failure to protect, arising out of the alleged harassment, acts of verbal harassment and taunting alone cannot qualify as constitutional violations.  See Stepney v. Gilliard, 2005 U.S. Dist. LEXIS 31889, at *19, 2005 WL 3338370 (D.N.J. Dec. 8, 2005) (stating "verbal harassment and taunting is neither 'sufficiently serious' nor 'an unnecessary and wanton infliction of pain' under the common meaning of those terms.  'Verbal harassment or profanity alone . . . no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under [Section] 1983") (quoting Shabazz v. Pico, 994 F. Supp. 460, 474 (S.D.N.Y. 1998)); see also Robinson v. Taylor, 2005 U.S. Dist. LEXIS 20951, at *8–9, 2005 WL 2340745 (D.Del. Sept. 26, 2005) ("[M]ere verbal harassment does not give rise to a constitutional violation[;

19

even if it is] inexcusable and offensive, [it] do[es] not establish liability under section

1983) (quoting McBride v. Deer, 240 F.3d 1287, 1291 n. 3 (10th Cir. 2001));

Abuhouran v. Acker, 2005 U.S. Dist. LEXIS 12864, at *15 (E.D. Pa. June 29, 2005)

("It is well established . . . that . . . verbal harassment, . . . standing alone, do[es] not

state a constitutional claim").  Further, mere threatening language and gestures of a

custodial officer do not, even if true, amount to constitutional violations.  Balliet v.

Whitmire, 626 F. Supp. 219, 228–29 (M.D. Pa. 1986) ("[v]erbal abuse is not a civil

rights violation  . . . ").  It is clear from the allegations of the complaint that at no point

in time was Cessna's personal safety at risk.  Thus, because Cessna's various

allegations of verbal harassment, however severe they may have been, were

unaccompanied by physical acts, the personal safety claim is subject to dismissal.

### C.   Fourteenth Amendment

#### 1.   Due Process

The Fourteenth Amendment of the United States Constitution provides, in

pertinent part, that "[n]o State shall . . . deprive any person of life, liberty, or property,

without due process of law. . . ."   The due process analysis starts with determining

whether the liberty interest asserted is one that is protected by the Fourteenth

Amendment.  Montanez v. Sec'y Dep't of Corr., 773 F.3d 472, 482 (3d Cir. 2014)

(quoting Evans v. Sec'y Pa. Dep't of Corr., 645 F.3d 650, 663 (3d Cir. 2011)); Fraise

v. Terhune, 283 F.3d 506, 522 (3d Cir. 2002).

Significantly, Cessna did not lose good conduct time as a result of any of the

misconduct proceedings and, therefore, is not entitled to due process protection.  Due

process protections only attach in prison disciplinary proceedings in which the loss of

good-time credits is at stake.  See Wolff v. McDonnell, 418 U.S. 539, 564–65 (1974).

In Wolff, the Supreme Court held that an inmate must receive "(1) advance written

notice of the disciplinary charges; (2) an opportunity, when consistent with

institutional safety and correctional goals, to call witnesses and present documentary

evidence in his defense; and (3) a written statement by the factfinder of the evidence

relied on and the reasons for the disciplinary action."  Superintendent v. Hill, 472 U.S.

445, 454 (1985).  Further, the disciplinary hearing officer's decision must be

supported by "some evidence" on the record.  See Hill, 472 U.S. at 454, 105 S.Ct.

2768.

Moreover, Cessna's claims that his due process rights were violated during his

misconduct hearing, fail as a matter of law.  In Heck v. Humphrey, 512 U.S. 477

(1994), the Supreme Court ruled that a constitutional cause of action for damages does

not accrue "for allegedly unconstitutional conviction or imprisonment, or for other

harm caused by actions whose unlawfulness would render a conviction or sentence

invalid," until the plaintiff proves that "the conviction or sentence has been reversed

on direct appeal, expunged by executive order, declared invalid by a state tribunal

authorized to make such determination, or called into question by a federal court's

issuance of a writ of habeas corpus."  Id. at 486–87.  This rationale was later extended

to disciplinary proceedings.  Edwards v. Balisok, 520 U.S. 641 (1997).  As such, an

21

inmate may not bring a civil rights action related to an inmate disciplinary proceeding without first challenging and overturning, *via* appropriate proceedings, the disciplinary hearing in question.  Id. at 646–47.  To summarize, "a state prisoner's § 1983 action is barred (absent prior invalidation – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) — *if* success in that action would necessarily demonstrate the invalidity of the confinement or its duration."  Wilkinson v. Dotson, 544 U.S. 74, 81–82 (2005) (emphasis in original).  The due process claims related to Misconducts B467957, B274040, and A335634 are therefore subject to dismissal as they have not been declared invalid.

Cessna's claims that his confinement in the RHU and the conditions to which he was exposed violated his due process rights are also subject to dismissal.  The court's due process inquiry is whether the state action resulted in an "atypical and significant hardship" on the plaintiff-inmate:

> In Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed. 2d 418 (1995), the Supreme Court announced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by procedural due process guarantees. Although the Court acknowledged that liberty interests could arise from means other than the Due Process Clause itself, the Court concluded that state-created liberty interests could arise only when a prison's action imposed an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'  515 U.S. at 483, 115 S.Ct. 2293  ...  In finding that the prisoner's thirty-day confinement in disciplinary custody did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest, the Court considered the following two factors: 1) the amount of time the prisoner was placed into disciplinary segregation; and 2) whether the conditions of his confinement in disciplinary

segregation were significantly more restrictive than those imposed upon other inmates in solitary confinement.  Id. [at 486, 115 S.Ct. 2293].

Shoats v. Horn, 213 F.3d  140, 143-44 (2009).  Placement in prison disciplinary or administrative segregation will implicate a protectable liberty interest only if it dramatically departs, in length of time or otherwise, from basic prison conditions.  See, e.g., Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002) (seven months in disciplinary segregation is insufficient to trigger a due process violation); Griffin v. Vaughn, 112 F.3d 703, 706-07 (3d Cir. 1997) (fifteen months in administrative custody is insufficient to trigger a due process violation).   Confinement in administrative or punitive segregation is insufficient, without more, to establish the kind of "atypical" deprivation of prison life necessary to implicate a liberty interest.  Sandin, 515 U.S. at 486; see Griffin, 112 F.3d 706-07.

Cessna's confinement to disciplinary segregation for 120 days is not a significant departure in length of time from basic prison conditions.  The denial of commissary and telephone privileges does not amount to forms of discipline that impose an atypical and significant hardship on the ordinary incidents of an inmate's prison life.  See Young v. Beard, 227 F. App'x. 138, (3d Cir.  2007) (stating that an inmate sentenced to an aggregate of 930 days in disciplinary confinement without dayroom or telephone privileges did not constitute an atypical and significant hardship sufficient to trigger a liberty interest under Sandin ); see also Troy v. Kuhlmann, No. 96 Civ. 7190(BSJ), 1999 WL 825622, at *12 (S.D.N.Y. Oct.15, 1999) (finding "denial of privileges such as telephone, package, and commissary privileges do not represent the type of deprivation which could reasonably be viewed as imposing an

atypical and significant hardship on the inmate").  The loss of a prison job is insufficient to

state a due process claim as prisoners do not have constitutionally protected interests in

holding a job.  See James v. Quinlan, 866 F.2d 627, 629 (3d Cir. 1989).  And the lack of

opportunity to exercise can only rise to a constitutional level 'where movement is denied and

muscles are allowed to atrophy, [and] the health of the individual is threatened.' "  Dickens v.

Danberg, No. 10-786-LP, 2012 WL 2089516 at * 6 (D.Del. 2012) (finding no constitutional

violation for a three (3) month deprivation of exercise), quoting Spain v. Procunier, 600 F.2d

189, 199 (3d Cir. 2012).  Because Cessna's 120 days of disciplinary confinement and the

accompanying denial of privileges are not the type of atypical or significant hardships

contemplated by Sandin, 515 U.S. at 483, his due process claims are subject to dismissal.

2.     Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that a state may

not "deny to any person within its jurisdiction the equal protection of the laws," which is

essentially a direction that all persons similarly situated should be treated alike. U.S.

CONST., amend. XIV; City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)

(citing Plyer v. Doe, 457 U.S. 202, 216 (1982)).  An equal protection claim can be brought

by a "class of one," a plaintiff alleging that he has been "intentionally treated differently from

others similarly situated and that there is no rational basis for the difference in treatment."

Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Williams v. Morton, 343 F.3d 212,

221 (3d Cir. 2003); see also Jean–Pierre v. Bureau of Prisons, 497 F. App'x 164, 168 (3d Cir.

2012).  Cessna's equal protection claim fails because he fails to allege that he was treated

differently than any similarly situated prisoners.  See Andrews v. City of Phila., 895 F.2d 1469, 1478 (3d Cir. 1990).

IV.    **Conclusion**

For all the reasons set forth above, defendants' motion (Doc. 18) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)  will be granted.[1]

An appropriate order will issue.

**BY THE COURT:**

**s/James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**

Dated:  March 23, 2015

---

[1]Because Cessna is unable to cure the deficiencies of the complaint, affording him an opportunity to amend would be futile.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 110–111 (3d Cir. 2002) (finding that a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility).